Pearce & al. *v.* Norton.

## Pearce & *al. vs.* Norton.

A. and B. by contract in writing, agreed to sell a vessel to C. for $1030, the latter to receive her at that time, and to pay for her by furnishing his notes, one for $530, payable in 6 months, and one for $500, payable in 12 months, indorsed by J. B. or such other security as should be satisfactory to A. and B. and upon which the latter were to give C. a bill of sale. And C. therein promised on his part to furnish the said notes or security within 60 days, or to return the vessel and pay for her use. C. took the vessel and sailed her nearly two years, when she was lost, he not having furnished the notes or security agreeably to the stipulations in the contract, and having received no bill of sale. *Held*, that the loss was the loss of C. — and that A. and B. might recover of him, in a suit brought on the contract, the agreed price of the vessel.

And this, notwithstanding A. and B. more than a year after the alleged sale, made oath at the Custom-house that they were the only owners, and that C. was master.

THIS was an action of assumpsit to recover the price of a vessel, and was founded on the following special agreement between the parties.

" We agree to sell the schooner *Honor & Amy*, to Capt. Jon-
" *athan Norton* of the town of *St. George*, in the State of
" *Maine*, for one thousand and thirty dollars, to receive her as
" she now lies at the wharf in *Gloucester*, and to pay for her
" in the following manner: to give us his notes of hand for
" $530, payable in six months from the first day of *May*, 1826,
" without interest, and also a note for $500, payable in twelve
" months from the same date as the first named note, interest
" after six months; the said notes to be indorsed by *Mr. James*
" *Bartoe*, or such other security as shall be satisfactory to us,
" and on the delivery of the notes aforesaid, we agree to give
" the said *Norton* a good and sufficient bill of sale of the said
" schooner. And the said *Norton* on his part agrees, within
" 60 days from the 13th day of *May*, 1826, to produce to us
" the above named notes of hand or other satisfactory security
" for the payment of said schooner, or to surrender her up to
" us in *Gloucester*, paying for her use a reasonable compensa-
" tion. In witness whereof we have signed duplicates of this

" agreement, and which we agree shall be binding upon us for " the same, although it may not be technically correct.

" Dated in *Gloucester, May* 13, 1826.

" *Jonathan Norton,*

" *William Pearce & Sons.*"

It was in evidence, that the defendant took the vessel at the time of the execution of the agreement, and sailed her at his own expense, coastwise, until *January,* 1828, when she was lost on *Cape Porpoise ;* though he did not furnish the security agreeably to the foregoing stipulations.

The defendant proved, that in *June,* 1827, he was at *Gloucester*, the place of the plaintiffs' residence, with the vessel ; and that one of the plaintiffs at that time took the papers, being a temporary register, to the Custom-house, and took a new enrolment for her, and made oath before the Collector, that he with the other plaintiffs were the sole owners, and that the defendant was master.

The defendant's counsel contended that the making oath as aforesaid, and taking out a new enrolment after the time limited for executing the contract, was evidence of the fact of their accepting the vessel, and an estoppel in law upon the plaintiffs to deny that the vessel was theirs ; and that if there was a subsequent sale of her to the defendant, yet the plaintiffs could not recover in this action.

On this point the Chief Justice, before whom the cause was tried, instructed the jury that the facts referred to above were not conclusive upon the plaintiffs, and that they were not estopped to deny their ownership ; that the plaintiffs were not bound to make a bill of sale before security given, and that they might consider the plaintiffs as holding the vessel for their security for the purchase money ; and that it was competent for them, notwithstanding the transaction at the Custom-house, to find that the defendant was the owner, and if he was the owner at the time she was lost, the loss was the defendant's, and he was liable on the contract declared on for the sum therein named and interest ; and the jury found accordingly. And in pursuance of special instructions from the Court, the jury also certified in writing, that upon the evidence in the cause

they found that the vessel at the time she was lost was the property of the defendant.

To which opinion and directions of the Court the counsel for the defendant took exceptions, which were duly signed and allowed.

*Ruggles*, for the defendant, contended, that the contract declared on did not amount to an *actual sale*, but was a mere contract *to sell*. The language of the contract is, "agree to sell," not "have sold." By the contract the defendant was to do one of two things — to furnish the security required — or to deliver up the vessel and pay for the use of her. The latter he has done. In *June*, 1827, he was at *Gloucester* with the vessel, and delivered her up to the plaintiffs, who caused the papers to be changed at the Custom-house, and who then made oath that they were the true owners. This was an acceptance on their part, and they are thereby estopped now to deny their ownership.

*Allen*, for the plaintiffs, maintained that there was *a sale* — the price was agreed on — and the vessel was put into the defendant's possession, where she remained until lost. And though some of the terms may not have been complied with by the defendant, it does not lie with him to take advantage of that omission.

The plaintiffs are not estopped to deny their ownership. The doctrine is of long standing that the ownership may be in one person for certain purposes, and in another person for other purposes. *Taggart v. Loring*, 16 *Mass.* 336; *Reynolds v. Toppan*, 15 *Mass.* 370; *Colson v. Bonzey*, 6 *Greenl.* 474; *Weston v. Penniman*, 1 *Mason*, 306.

The defendant, by retaining the vessel, beyond the time named in the contract, elected to keep her.

*Ruggles*, in reply, stated that, he did not question the principle, that the legal ownership may be in one person for certain purposes, and in another for other purposes. But this is not a question between one setting up a claim for supplies furnished, and one alleged by him to be the owner — but between two, each alleging the other to be the owner.

In the case of *Weston v. Penniman*, the Custom-house title and all the papers and proceedings were in perfect consistency with the agreement of the parties — with the contract.

Here the contract had been broken and rescinded when the vessel went to *Gloucester*, and the plaintiffs took oath that they were owners and the defendant merely master.

If in this case there was no actual sale, the vessel not having been returned, the amount of damages, if the plaintiffs are entitled to any, would be *the value of the vessel*, and therefore the verdict should not stand, it having been rendered for the amount of the purchase money, which may or may not be the true value.

WESTON J. delivered the opinion of the Court.

The defendant agreed to purchase the vessel in question for a stipulated sum, to be paid in six and twelve months. He was to receive her on the day of the date of the contract; and it was in evidence that she did on that day go into his possession. A sale and delivery appears to have been contemplated by the parties, the defendant agreeing to furnish at a future day satisfactory security, in which case he was to receive from the plaintiffs the formal evidence of title. The defendant thereafterwards made use of the vessel at his pleasure and treated her as his property, until she was lost while in his employment. He did not furnish the security required; but retaining the vessel, he might be considered as justly indebted to the plaintiffs in the amount of the purchase money. The formal and legal title was to remain in them, until they were furnished with other security. This was expressly agreed. It was then substantially a purchase by the defendant, the plaintiffs holding the legal title by way of mortgage, or until otherwise paid or satisfied. The agreement itself, together with the conduct of the parties, may well justify that construction. The oath taken by one of the plaintiffs at the Custom-house, in *June*, 1827, and the new enrolment there received, is in perfect accordance with this view of the case. If the plaintiffs had then accepted possession of the vessel, the contract of sale would have been rescinded or vacated; but the defendant continued in possession as before,

and the vessel remained subject to his control and management. What was transacted at the Custom-house, was not regarded by either party as interfering with the right of the defendant to treat the vessel as his own.

But whether we consider the defendant as the purchaser or not, the plaintiffs have a right to recover under the contract. The defendant agreed within sixty days to furnish the security, or surrender the vessel. He did neither. The new papers taken a year afterwards, the possession remaining with the defendant, did not amount to a surrender of the vessel. If the defendant is to be treated as a purchaser from the day of the contract, the plaintiffs are entitled to the price stipulated ; if not, the failure on his part to surrender the vessel as agreed, would entitle them to the same measure of damages, as that price was the fair value, at which she was by mutual consent estimated.

*Judgment on the verdict.*